161302 and number 161565 Kenneth Nevor v. Moneypenny Holdings, LLC Good afternoon. Please decode, Your Honors, Robert Powers for the Appellate Moneypenny Holdings. I'm here today to ask the Court to set aside the judgment of the District Court for the District of Rhode Island and rename the case for a new trial on the question of damages. Acknowledging the heavy burden of the clearly erroneous standard, Your Honor, consideration of the entire record indicates that the Court made several clear mistakes. First mistake, Your Honor, was with respect to the Court's holding finding that Mr. Nevor suffered over $700,000 in lost earnings and earning capacity. This finding, Your Honor, was based upon the conclusion that Mr. Nevor, who had been involved in sailing over a period of his career, would have made $120,000 a year for the next 30 years. But the holding was based in part upon the conclusion that Mr. Nevor had demonstrated throughout his career was steadily earning, steadily rising earnings in the area. Your Honor, wasn't there evidence in the record that for a relatively short time that year he had already earned upwards of $30,000 and if you extrapolated from that he fell within the group that would have been making well in excess of $100,000 a year? Absolutely, there was evidence that in the first three months of the year he made $30,000 working for Moneypenny, Your Honor, but it would be incorrect to extrapolate from that to get to the $120,000. Well, looking at the evidence which they got from the record on what you had paid other people, what your client had paid other people during that period, didn't that seem to be a logical position to take by the court, taking from the evidence that he had, given his rather vast skills, not only was he a good sailor, but he was a good mechanic, he could do a to pay him a significant sum of money for a few months' work, and if he hadn't been injured you would have expected that that would have continued. Your Honor, I have to concede the facial appeal of that, but the problem is that Mr. Nebbe did not have a contract with Moneypenny, there is no evidence that he would have continued his employment with Moneypenny. The evidence quite clearly is that he had concluded the job that he had been hired to do, which was to take the boat that had been purchased. He had raced in the previous race, and he was on the boat going from St. Thomas to the next island where there was going to be another race. That's correct, Your Honor. And when he got injured, they didn't want him to leave because they needed him. So isn't that a reasonable inference that he was going to continue to work for them? No, sir, because Mrs. Swartz testified that he wasn't going to work for them. But moreover, it's not necessary to the district court's findings that he would continue to work for Moneypenny. What the district court held is that he had demonstrated the skills to work at that level, had shown what his earning capacity is by what Moneypenny had paid him for those three months. So based on the testimony of the vocational expert, which the judge accepted, it was reasonable to assume that he had established an earning capacity and no reason to feel that there wouldn't be work available, even if Swartz didn't employ him, that someone else wouldn't, if he had the requisite skill set, which the district court said he did. Well, Your Honor, the record demonstrates that he did not. It doesn't demonstrate that. You can argue that it shows that. You need to not make a whole bunch of reactions. Oh, I'm sorry. Yeah. You know, you can cherry pick bits of this record that support your view, all right? But the district court is entitled to find the facts here and draw inferences from those facts. And what I'm gathering from your argument is that you're unhappy with the inferences that Judge McConnell drew from the facts, but he's the one who heard the evidence. We can't, unless those inferences were unreasonable or unsupported, we can't set them aside. Your Honor, I'm clearly unhappy with the inferences that the judge drew. And if it was just that, Your Honor, we wouldn't be standing here asking for a new trial on damages. But when the judge makes us a specific finding that Mr. Never's earnings had been steadily rising over the last several years, and the fact is that in the prior two years they had declined, if that's not clearly erroneous, Your Honor, and it's our contention, it is clearly erroneous. And that's the type of mistakes that are evident on this record, Your Honor, that justify the judgment being set aside. Mr. Never worked, but most of the work that he had done in his entire career was on the shore. Absolutely no evidence in the record that he can't continue to do that. Mr. Humans, who was the expert, said that there is no reliable information out there with regards to this particular industry. The contrast to the Jones and Laughlin case, which we cited, Your Honor, in that case, there was, in the long-shoring industry, steady employment, steady wage rates. When you've got that, and you can put that into the evidence, great, but to suggest that Mr. Never, who admitted on the stand that he had not served as a captain, wasn't qualified to serve as a captain, or as a navigator, or as a tactician, would all of a sudden have elevated himself in the absence of any contract, any commitment, that, Your Honor, is speculation, and that's the problem with the record. If you look at this record on its entirety, the issue with regards to the judge's findings, Your Honor, it meets the clearly erroneous standard, and that's why it ought to be set aside. We've also got the problem, Your Honor, with the fact that the judge didn't address some of the defenses that we raised. With regards to the mitigation of damages, the record is clear. Well, I'm not sure the record is clear on mitigation of damages. There was a question of whether he went to a particular place, which was doing a particular kind of PT, physical therapy, and there was a question as to whether he actually was told to go there. I don't think the word clear is from the record. Your Honor, if I had finished my sentence, I didn't mean to suggest the record was clear on the evidence. The record is clear that the judge didn't address it. Yeah, but there are some findings that judges make implicitly, and the mitigation defense, as Judge Stahl pointed out, was based mainly on a claim that he had not undertaken a certain course of prescribed therapy in the face of proof that the therapy was unavailable to him. He was sent to the Donnelly Rehabilitation Center, which wouldn't accept him, because it only accepted cases under the Rhode Island workers' compensation statute. Your Honor, the record does indicate that Dr. Green, who did the surgery, had indicated that within a matter of six months that he had reached five out of five on his strength rating. He had returned to his precondition. He stopped going to Dr. Green, and he started going to the expert who testified on his behalf in this case, Dr. Cohen. Yeah. But that evidence was in the record and not to have been considered, and my client was entitled to a finding. But clearly, I accept the judge could have said, I don't accept it, but he should have made a finding one way or the other, and he didn't do that. But we're allowed to infer the finding that he didn't expressly state under our case law, right?  I don't believe, Your Honor, that when you're— In principle, the fact that a particular thing isn't mentioned but the judgment goes adverse to you would seem like an implicit finding against you, hence the appeal. Then the only question is, is that implicit finding really a finding at all? But on the record, I thought the district court had said, look, I've heard a lot about this issue, I really get it, I understand it. So then when he goes on to rule effectively against you, which is why you're appealing, why doesn't it make sense for us to say he implied that he found that there was no problem on mitigation? It's not as if he just gives us no indication that he thought about it. He specifically said that he had thought about it. He then doesn't make a finding expressly, I agree with you, but implicit in the ruling is an adverse finding to you, and I don't see why that's not enough. Well, Your Honor, we're here and we are appealing today because on the entirety of this record, that issue, the issue with regards to the earning and the earning capacity, the issue with regards to the emotional distress, we've got findings there where the judge is using words to describe what he says that must have never underwent when there's nothing in the medical records. You see, when you have occasion after occasion the judge making specific findings and you go to the record and it's just not there, Your Honor, it's our position that the judge took the evidence and he went too far. He made mistakes in characterizing this particular record to justify these findings. You know, almost out of time, Your Honor, the other major issue with the case, Your Honor, is the court's award of interest, the judgment interest. And I'm going to run out of time, Your Honor, but I guess I will rely on the briefing for that.  Thank you, counsel. Your Honor, Morris Cusick, on behalf of Mr. Never, with me is Vincent Majera. Mr. Majera has been with me since day one in this case. Mr. Cusick, let me ask you to start where the appellant's counsel ended. That's with the matter of interest, right? As I understand it, Judge McConnell granted pre-judgment interest on the entire award. Is that correct? Yes, that is correct. All right. How can we let that portion of the pre-judgment interest stand insofar as it is superimposed on an award of future lost earning capacity and future pain and suffering? Isn't the law in this circuit settled that there is no pre-judgment interest that can be awarded in a maritime case on future damages? I actually don't think it's limited to maritime cases. Well, maybe not. But to address that, it is directly addressed in Borges. This is fascinating stuff. My favorite aspect of this case is interest. It is directly addressed in Borges. Although it says something interesting in Borges. It says we anticipate that the jury is going to award damages on this. It's in the New Jersey Bar Commission report that I say, and several cases say that, the reason we don't award pre-judgment interest on those two damages is we kind of anticipate the jury has already done that. There's a vague reference to that at the end of Borges. I haven't heard it. Well, the reference must be pretty vague because I re-read that case last night and it totally escaped my attention. But the whole thing in Borges, as I read the case, is that there is no pre-judgment interest on future damages, extending out past the date of the judgment. Yes, Borges does say that. Aren't we bound by Borges? Because we have a doctrine called the law of the circuit doctrine that binds us and, by extension, the lower courts in this circuit, to follow circuit precedent that's on point in the absence of any supervening authority. Does that settle the issue for purposes of this case? It does not because in Borges and in Rivera v. Roderi, this court specifically said it was not, it said it very cleverly, it said we are not going to follow our prior authority of Moore McCormick. At the time of the 1950s, it might be 1952, Moore McCormick said we're not awarding interest in amnesty cases. Then this circuit in Borges, it clearly states that. And, Judge, if you read it that clearly, you remember the line I'm talking about. It does, but there was intervening authority that said, from out of circuit, that said that pre-judgment interest in amnesty cases could be awarded on what I'll call ordinary damages, damages that already had accrued. And we simply yielded to that supervening authority, as the Borges court should have done. It did, but limited its holding to say, Moore McCormick is no longer good law as to past damages, but as to future damages, we continue to hold no pre-judgment interest. That's correct, Your Honor. I'd like to point out the line that I think goes my way from, it's cited in other cases, it's cited in the New Jersey report also, from Borges that I was referring to earlier, it's on page 445, and it states, one would normally expect of any amount awarded that it is aimed at compensating for future pain, suffering, or emotional loss to be included in the lump sum award itself without additional interest. I think what they're saying there is what's reflected in other cases, is that jurors usually take that into consideration. I understand that. I do not think it's an abuse of discretion. We have to realize in this case that we put on, with our last witness, a reasonable rate of interest. The opposition put on proposed findings of fact and conclusions of their own. But the question here isn't as to weight. The question here is as to entitlement. The rate of interest could be the most reasonable known to man. But the fact of the matter is that the law in this circuit is that you're not entitled to prejudgment interest on future damages. The sentence that you're quoting, I don't fully understand how it is evidence that Borges says you are entitled to prejudgment on future damages. It doesn't say, nowhere does it say that I am entitled. But since there's a sentence in Borges that says you're not entitled, why does that sentence matter then? Well, what I'm saying is that the sentence that I'm citing to says there is a concept that the jury has taken that into consideration. But in our case, all of the proposed findings of fact and conclusions of law that Judge McConnell completely addressed this issue. He left it out. It's not a situation where it's possible that the finder of fact or the jury took into consideration interest because thereafter Judge McConnell does make the award. So he seems to have a negative inference. He's saying I want to make this award here for future pain and suffering. It was, Borges was openly, what I'm trying to say is Borges was openly briefed. But you're saying because this is a, in other words, he's the fact finder. He's doing what the jury would have done anyway. Right. And the jury is allowed to do it anyway. Well, what I'm saying is the concept is that the jury has already taken interest into consideration, which is why we don't apply it to future pain and suffering, future damages. I'll go to that in a second. But here Judge McConnell knew all about it, did not make an award of interest, and then later on did. So he did not do what we're worried about, the jury figuring it in. He did precisely what we're worried about. He did something that this court had told him he had no authority to do. That is award prejudgment interest on future damages. Yes, he did go beyond the, I would say the dicta in Borges, Your Honor. Your Honor, while I was getting ready for this case. Just so I understand, is your point that in identifying the damages award, he could have effectively done what he ended up doing on the back end through prejudgment interest, just up the number that way? That would have been fine. So then you're saying it's no different what he did? I'm sorry, could you say that again? Let's say he's been tried to a jury. The jury in coming up with the damages award, the worry is they've sort of boxed the number. They've taken interest into consideration. Therefore, the judge can't then award prejudgment interest on top of that, because that would be double recovery. That's the idea that you're saying with what Borges is against? No, that wasn't what I was saying. What I was saying, what I think really happened here is the judge decided, what I think happened here is the judge decided to give us the jury verdict and then wanted us to settle on the interest rate, because it has been thoroughly briefed. When he did not, we had a move under Rule 52B, and then it was granted and at the state rate. I noticed while I was preparing for this case, I ran into another case of Moore v. United States, which is an 817 fed subset. You've got to send us a Rule 28J letter if the case isn't in your brief. I'm sorry, Your Honor? You need to send us a 28J letter giving that precedent if you haven't cited to it. I'm sorry, and I won't cite to it. But there are cases where, there are administrative cases where it's outside of Borges, but where they do grant interest on the whole ball of wax. They may, but they're not in this circuit. They are. In Rivera v. Retiveri, the court said, we can grant interest based on the same policies that follow the Rhode Island rate, that we want to encourage settlement, that the judge had the best view of the evidence, and that Rivera v. Retiveri, Moore v. United States, is a First Circuit case, cited in my brief. Okay. Your Honor, I'd like to also point out, the most important document here, I really think, is the New Jersey Bar Report, because it points that, and the law review that they rely on is important too, because it points out that there is now a massive wave, it's a direct cite out of their law review article on page 42 of their brief, there's a massive wave of collateral litigation going on now. Pre-judgment interest, it's going across the country, and now it's here. If we keep litigating, their article is interesting, because the administrative world is a mess, and the circuits go all those different ways. If we enter into this realm of splitting it up and making, the New Jersey Bar Report says, don't make jury verdict forms any more complicated. New Jersey did follow that to some extent, they point out not all the way, but one of the concerns is not splitting everything up, so there's interest here and interest there, and we separate the different kinds of damages. I think that's something we have to avoid, or else it's going to make cases more complicated, more appeals, and then we'll have collateral issue litigation, I think, what we're seeing here. Thank you. Thank you.